**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CAROLYN ADAMS | * | |
| | * | |
| v. | * | Civil Case No. CCB-11-3755 |
| | * | |
| SHEPPARD PRATT HEALTH SYSTEM | * | |

******

## MEMORANDUM

Now pending before the court is a motion for summary judgment filed by defendant Sheppard Pratt Health System ("Sheppard Pratt").[1] [ECF No. 71]. *Pro se* plaintiff Carolyn Adams has sued Sheppard Pratt alleging age, race, color, and sex discrimination, as well as retaliation, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.,* and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.* The issues in this case have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, Sheppard Pratt's motion for summary judgment will be granted.

### BACKGROUND

Ms. Adams is an African-American woman who worked as a nurse at Sheppard Pratt beginning on July 10, 2000. Compl. ¶ 6. Ms. Adams was born in 1938, making her approximately 62 years old at the time of hiring. Compl. ¶ 3. Initially, Ms. Adams's performance evaluations reflected that she was a "solid performer" or that she "exceeds

---

[1] Also pending is Plaintiff's "Motion to Correct or Amend." [ECF No. 76]. In that motion, Ms. Adams asks to correct or amend her Amended Complaint [ECF No. 55] to reinstate paragraphs 1-10 from her original Complaint [ECF No. 1]. In fact, the only changes made in the Amended Complaint were (1) replacing the named defendant and (2) adding the name of Ms. Adams's then-counsel in the signature block. [ECF. No. 55]. Because all of the substantive material in the Amended Complaint, including paragraphs 1-10, remained unchanged from the original Complaint, Plaintiff's Motion to Correct or Amend will be denied as moot.

standards." Exh. B-3, B-4, B-6, B-7, B-9.[2]  Beginning in the 2005-06 time frame, however, Ms. Adams's performance evaluation, which was prepared by her then-supervisor, Pat Kemble, began to reflect some performance problems.  Exh. B-10 ("Does not always respond to requests from residents in a timely fashion.  Relationship with co-workers & manager is strained at times. . . Delays in responding to emergency situations . . . impatient + gruff with employees at times.") After an improved evaluation in 2006-2007, Ex B-11, in the 2007-2008 evaluation Ms. Kemble again noted problems.   Exh. B-13 ("Often [complains of] being too busy to assist staff with residents in crisis.  Curt at times with RCs.  Intimidates other nurses who will then complete tasks rather than hand them off at shift change . . . Becomes upset when it is necessary for her to cover for peers.").   After Ms. Kemble, Ms. Adams reported to a new supervisor, Karen Malstrom.  On September 29, 2009, Ms. Adams received disciplinary action in the form of a Corrective Action Report, in which Ms. Malstrom alleged that a resident had swallowed batteries, and that Ms. Adams failed to take immediate action. Exh. B-21.  Shortly thereafter, in January, 2010, Ms. Malstrom gave Ms. Adams a negative performance evaluation.  Exh. B-17 ("Relationships with residents, peers and coworkers remain a source of concern.  At times had difficulty collaborating with various team members interfering with optimal patient care . . . Delayed in responding to serious medical emergency situation resulting in delay in resident getting prompt medical care. . . . Has some ongoing difficulty adapting to change, acuity and being flexible.").  On February 4, 2010, Ms. Adams received a second Corrective Action Report alleging an incident in which Ms. Adams had "failed to assess the medical needs of an employee who was physically attacked by a resident" and "displayed uncooperative behavior."  Exh. B-24. On February 21, 2010, Ms. Adams filed charges with the Equal Employment Opportunity

---

[2] Exhibit numbers refer to the exhibits attached to Sheppard Pratt's Motion for Summary Judgment.  [ECF No. 71].

Commission ("EEOC"), alleging that the two Corrective Action Reports, and the negative performance appraisal dated January, 2010, resulted from discrimination on the basis of her race, sex, and age, and from retaliation. Compl. ¶ 9; Exh. B-29.

On August 11, 2010, Sheppard Pratt notified Ms. Adams that her position had been eliminated as result of a reduction in force. Compl. ¶ 4; Exh. B-28. Her position was eliminated because she had "active disciplinary actions." Exh. A (Doughty Aff.) at ¶ 22. Although she believed that her inclusion in the reduction in force was both discriminatory and retaliatory, Ms. Adams did not amend her charge to the EEOC to include any allegations pertaining to her termination. Instead, she received a right-to-sue letter from the EEOC, based on her original complaint, on September 28, 2011. Compl. ¶ 10. She then timely filed this pending case.

Sheppard Pratt argues that summary judgment is appropriate on two grounds. First, Sheppard Pratt argues that Ms. Adams failed to exhaust her administrative remedies because she did not raise claims pertaining to her termination with the EEOC or with any other administrative agency. Second, Sheppard Pratt contends that Ms. Adams has not established a prima facie case of retaliation under the relevant statutes. Each argument will be addressed in turn.

## *ANALYSIS*

### I.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Whether a fact is material depends upon the substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Conclusory or speculative allegations do not create a genuine issue of material fact, nor does a "mere scintilla of evidence[.]" *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649 (4th Cir. 2002) (citing *Phillips v. CSX Transp., Inc.,* 190 F.3d 285, 287 (4th Cir. 1999)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)). However, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

2.      EXHAUSTION OF ADMINISTRATIVE REMEDIES

Ms. Adams's Complaint states that she is complaining about the termination of her employment, and that she was "[r]iffed after the attempt was made to fire me, this was an act of retaliation for my complaints of discrimination and disparate treatment, and filing the charges with the agency."  Compl. ¶ 4.   The reduction in force occurred after Ms. Adams filed her EEOC charge, and because she did not amend the charge to notify the EEOC that she had been terminated, there is no indication that the EEOC investigated any retaliation claim as it pertained to her termination. Instead, it appears that Sheppard Pratt first learned of the claims relating to Ms. Adams's termination through this lawsuit.

A plaintiff asserting claims under Title VII and ADEA must exhaust her administrative remedies before suing in court by filing a charge of discrimination with the EEOC. *See Jones v. Calvert Grp., Ltd.,* 551 F.3d 297, 300–01 (4th Cir. 2009); *Chacko v. Patuxent Inst.,* 429 F.3d 505, 506 (4th Cir. 2005). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996). If a plaintiff has not referenced her retaliation claim in her EEOC charge, the claim has not been properly exhausted.[3] *See Sloop v. Mem'l Mission Hosp., Inc.,* 198 F.3d 147, 149 (4th Cir. 1999). As a corollary to the rule, however, the Fourth Circuit has held that claims of retaliation for actions that follow the filing of an EEOC charge, if reasonably related to the original complaint, may be raised for the first time in court. *See Nealon v. Stone,* 958 F.2d 584, 590 (4th Cir. 1992); *see also Jones,* 551 F.3d at 303 (noting that the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), did not affect the validity of *Nealon* ). Because the reduction in force post-dated the filing of Ms. Adams's EEOC charge by several months, her retaliation claim is reasonably related to her original EEOC complaint, and need not have been expressly filed before that agency in order to proceed in this court.

Moreover, complaints filed by *pro se* litigants should be liberally construed. *See De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). While not expressly listing individual discrimination claims for the Corrective Action Reports and the January, 2010 performance evaluation, Ms. Adams's complaint refers to the "incidences of disparate and discriminatory

---

[3] Ms. Adams actually did indicate in her EEOC charge that "retaliation" was one of the bases for Sheppard Pratt's alleged discriminatory conduct. Exhibit B-29. Presumably, at that time, she intended to allege retaliation for grievances she had filed at Sheppard Pratt, as she could not then be alleging retaliation for the EEOC charge that had not yet been filed.

treatment" that were the subject of the EEOC charge. Compl. ¶ 6. A liberal reading of her complaint, therefore, would find that she intended to include discrimination claims for those incidents. She properly exhausted her administrative remedies with respect to those discrimination claims, and thus they are appropriately considered in this forum. Finally, because the decision to include Ms. Adams in the reduction in force was premised, according to Sheppard Pratt, on her receipt of the two Corrective Action Reports which she alleges were discriminatorily issued, the propriety of her termination is reasonably related to the conduct investigated by the EEOC, and is also properly before this court. *See* Exhibit A (Doughty Aff.) at ¶ 22 (noting that Ms. Adams was included in the RIF because of "[a]ctive disciplinary actions"). Thus, analysis of Ms. Adams's claims on the merits is appropriate.

II.    TITLE VII DISCRIMINATION CLAIMS

To survive summary judgment, a plaintiff claiming discrimination has to establish a genuine issue of material fact that discrimination occurred. Ms. Adams has failed to do so with respect to her claims of race or sex discrimination. At the summary judgment stage, a plaintiff must provide "specific evidentiary support" showing a genuine issue for trial by way of, for example, affidavits, declarations, or deposition testimony from appropriate fact witnesses. *See Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998). The only such evidence submitted by Ms. Adams is the Declaration of Linda Indyke, [ECF No. 27], which Ms. Adams filed previously in this case and referenced in her opposition to the summary judgment motion. Pl. Opp. 4; ECF No. 75. Ms. Indyke, a co-worker of Ms. Adams, was terminated by Sheppard Pratt prior to Ms. Adams's termination, and also alleges that she experienced discrimination. Indyke Decl. ¶ 1-9. Ms. Indyke's declaration makes no reference to any gender discrimination against Ms. Adams, and thus provides no support for that claim. With respect to race discrimination, Ms. Indyke

merely states, "I heard Ms. Malstrom make frequent disclaimers that race was an issue in targeting Ms. Adams for dismissal." Indyke Decl. ¶ 6. "Frequent disclaimers" do not establish the existence of discriminatory motivation. Accordingly, Ms. Indyke provides no direct evidence supporting claims of either race or sex discrimination. Moreover, none of the evidence submitted by Sheppard Pratt, including the excerpts from Ms. Adams's deposition, provides any non-speculative, fact-based support for her race or sex discrimination claims.

In addition to the lack of any direct evidence, Ms. Adams has not established a prima facie case of race or sex discrimination. "Title VII prohibits an employer from 'discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting 42 U.S.C.A. § 2000e–2(a)). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Id.* (citation omitted). Ms. Adams has established only two of those four elements: membership in a protected class and adverse employment actions. As to the other two elements, Ms. Indyke's declaration does not contain any information about Ms. Adams's job performance or about similarly situated employees of different races or genders who were (1) not disciplined for similar conduct; (2) awarded satisfactory performance evaluations following similar alleged incidents; or (3) continued as employees after the reduction in force with a similar history of disciplinary actions. As noted above, other than Ms. Indyke's declaration, Ms. Adams did not submit any evidence for consideration. Therefore, even viewing

the evidence in the light most favorable to Ms. Adams, she has failed to meet her burden to establish a genuine issue of material fact as to her Title VII race and sex discrimination claims.

III.    ADEA CLAIMS

In contrast to the race and sex discrimination claims, Ms. Adams has provided some evidence to support her age discrimination claim.  Specifically, Ms. Indyke's declaration stated that, "Ms. Malstrom would ask for any age-specific statements Ms. Adams had made and whether Ms. Adams was claiming age as an issue when she was unable to stay for the night shift after the night shift nurse had called out due to weather.  Ms. Malstrom would also mention something about wasn't it time for Ms. Adams to retire."  Indyke Decl. ¶ 6.  Ms. Indyke further declared that Ms. Malstrom "told me she was trying to get Ms. Adams fired and I shouldn't want someone like Ms. Adams on staff with me because, according to her, Ms. Adams yelled at other staff members and exempted herself from doing extra shifts at times of need due to age. . . . She wanted me to write an account about how Ms. Adams used her age to leave me with having to work the night shift.  When I said I couldn't remember exactly what we said, she wanted me to make it up, making sure to put down that Ms. Adams disqualified herself because of age."  *Id.* ¶ 7.    Significantly, Ms. Indyke's declaration only describes tangentially the two incidents described in the Corrective Action Reports Ms. Adams received.  Moreover, the incident described by Ms. Indyke, in which Ms. Adams apparently resisted covering a night shift, was not part of either the two Corrective Action Reports or the contested January, 2010 performance appraisal.[4]  *See* Exh. B-17, B-21, B-24.

"To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse

---

[4] According to the Complaint, the exchange between Ms. Indyke and Ms. Malstrom regarding the night shift happened in February, 2010.  Compl. ¶ 6.

action." *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 176 (2009). Considering either direct or circumstantial evidence, and again viewing the evidence in the light most favorable to Ms. Adams, her claim still fails. As the Fourth Circuit made clear in *Warch v. Ohio Casualty Ins. Co.,* 435 F.3d 510, 520 (4th Cir. 2006), "[d]irect evidence must be evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch,* 435 F.3d at 520 (citing *Taylor v. Virginia Union Univ.,* 193 F.3d 219, 232 (4th Cir. 1999) (en banc)). As a result, a plaintiff "must produce evidence that clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between that negative attitude and the employment action." *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 608 (4th Cir. 1999). In Ms. Adams's case, she has not adduced any evidence to show any connection between the age-related statements attributed to Ms. Malstrom by Ms. Indyke and the two Corrective Action Reports she received, which eventually led to her termination.[5] In the absence of such a nexus, the alleged statements by Ms. Malstrom do not constitute direct evidence of discrimination.

Ms. Adams also alleged that Ms. Malstrom's supervisor, the Program Director, Thomas Graham, had "informed others that he 'did not like older nurses because they cost more in PTO [paid time off].'" Am. Compl. ¶ 6. Because Ms. Indyke did not directly corroborate Mr. Graham's alleged statement in her declaration, Ms. Adams has not submitted any evidence supporting the allegation. However, even if evidence had been adduced to establish that Mr. Graham made the statement, Ms. Adams has not established any nexus between Mr. Graham's

---

[5] In fact, Ms. Adams essentially conceded the conduct underlying one of the two Corrective Action Reports at her deposition. *See* Exh. B (Adams Dep.) at 172, 185 ("The OD was not called when the resident said that she had swallowed the batteries. . . . I didn't immediately call the OD because I was preparing her chart so the chart could be ready when the OD came."). While she disputes the precise factual scenario alleged in the second Corrective Action Report, even a single open disciplinary action would have subjected her to scrutiny under Sheppard Pratt's reduction in force policy.

alleged view that older nurses are more expensive and the Corrective Action Reports leading to her termination.

Moreover, Ms. Adams has not established a prima facie case of age discrimination via circumstantial evidence. "Generally speaking, to establish a prima facie case of unlawful age discrimination, [a plaintiff] must show that (1) [s]he is a member of the protected class; (2) [s]he was qualified for the job and met [the employer's] legitimate expectations; (3) [s]he was discharged despite [her] qualifications and performance; and (4) following [her] discharge, [s]he was replaced by a substantially younger individual with comparable qualifications." *Warch*, 435 F.3d at 513. In the context of a reduction in force, a plaintiff is permitted to satisfy the fourth element by "introducing other probative evidence that indicates the employer did not treat age . . . neutrally when making its decision." *Causey*, 162 F.3d at 802. As discussed above, Ms. Adams has introduced no evidence that her performance met Sheppard Pratt's legitimate expectations at the time of the reduction in force, in light of her receipt of two Corrective Action Reports only months apart within one year of the job elimination. Moreover, she has introduced no evidence either that her position was replaced by a younger individual or that Sheppard Pratt did not treat age neutrally in the context of the reduction in force. In fact, no evidence has been provided regarding the ages (or races or genders) of the thirteen other employees terminated along with Ms. Adams. *See* Doughty Aff. ¶ 22. In the absence of such evidence necessary to establish a prima facie case of age discrimination, Sheppard Pratt is entitled to summary judgment.

IV.    RETALIATION CLAIMS

Ms. Adams alleges that she was terminated in retaliation for the filing of her EEOC charge. However, she has presented no competent evidence of retaliation. She makes the

conclusory assertion that her termination did not accord with the reduction in force policy, but does not explain how Sheppard Pratt deviated from its stated criteria. In fact, it appears that Sheppard Pratt properly applied its policy. *See* Exh. A-7 at 2 (stating that when permanent reductions in staff were required, the first group assessed for termination would be "[e]mployees who received written disciplinary actions (for work rules or performance) within the past twelve months."). Moreover, the declaration of Ms. Indyke provides no support for a retaliation claim. Ms. Indyke, who left Sheppard Pratt's employ on March 18, 2010, can shed no light on the reason for Ms. Adams's eventual termination in August, 2010. In the absence of any non-speculative evidence of retaliatory motive, summary judgment is appropriate.

## *CONCLUSION*

For the foregoing reasons, the defendant's motion for summary judgment will be granted. A separate Order follows.

Dated: _November 26, 2013_____         _____/s/_____
                                          Catherine C. Blake
                                          United States District Judge